CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: IKO ROOFING SHINGLE | ) | 09-MD-2104 |
| PRODUCTS LIABILITY LITIGATION | ) | MDL Docket No. 2104 ALL CASES |
| | | |
| GERALD CZUBA, | ) | |
| Individually and on behalf of himself | ) | 09-2295 (consolidated) |
| and others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IKO MANUFACTURING INC.; IKO | ) | |
| INDUSTRIES, LTD.; IKO MIDWEST, | ) | |
| INC.; and IKO PRODUCTION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER ON SUMMARY JUDGMENT

The named plaintiffs in this multidistrict litigation allege that roofing shingles manufactured by the defendants were defective and did not perform as expected after installation on buildings owned by the plaintiffs.

The defendants have moved for summary judgment as to plaintiff Gerald Czuba ("Czuba"), who purchased a modular home from a company in Alden, New York, in 1996. The modular components were delivered in six pieces and assembled on Czuba's lot in Buffalo, New York. Czuba had the company build a garage onsite.  Most of the shingles on the modular portion were installed before delivery.  Czuba had a choice between two types of IKO shingles. He chose Renaissance XL shingles based on the look and color and the 25-year warranty. Czuba had the same shingles installed on the garage.

In 2000, during high winds, Czuba's shingles began to tear and blow off the southwest and north sides of the roof.   He had several packages of spare shingles, and each year he would remove the rest of each torn shingle and replace it with a new shingle.  Between 2000 and 2009 he would replace three to six shingles each year.  In 2002, Czuba was on the roof and noticed that some shingles were beginning to display vertical surface cracks.  At that point, he thought, "it seemed like the problem was occurring and that, you know, I should be more observant of it. It's not something you can just walk away from and forget about."  Czuba Dep. 63.  Czuba noticed that each year the cracking got progressively worse.  Starting in 2006 or so, Czuba noticed that the shingles over the entire roof were curling and "sections of the roof looked like potato chips."  Czuba Dep. 68.  Also in around 2006, Czuba began to notice that the shingles on the garage were degranulating, gaps were widening, and the corners were curling.

In March 2009, there was a storm with severe winds.  A lot of shingles blew off the roof. Czuba reported the wind damage and filed a claim with his insurance company.  He was paid $11,300, which did not cover all of the cost of replacing his roof.  Czuba sued IKO because he was "promised a 25 year [sic] on a product and I got only  – after 12 years my roof was destroyed."  Czuba Dep. 67. In late March or early April 2009, Czuba contacted a lawyer.  He commenced his lawsuit on April 28, 2009.

The defendants argue that all of Czuba's claims are time-barred, and most of his claims also fail as a matter of law.

ANALYSIS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000).  "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56, the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

"When a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred." *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010).  Czuba filed his case in the Western District of New York.  Therefore, New York law applies. *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir 2006).  Nonetheless, "even when the substantive law of a nonforum state applies, Illinois courts apply the Illinois statute of limitations because statutes of limitations are procedural, fixing the time in which the remedy for a wrong may be sought rather than altering substantive rights." *Ennenga v. Starns,* 677 F.3d 766, 774 (7th Cir. 2012).

Illinois' "borrowing statute" may operate to further limit the statute of limitations.  The defendants cite *Chang* for the proposition that when the cause of action arises in a foreign state, the court must first look to that state's statute of limitations.  If the foreign state's statute of limitations is shorter than Illinois' limitation, the foreign state's limitation period applies.  If Illinois' is the shorter of the two, the Illinois limitation period applies. *See Chang*, 599 F.3d at

733.  The discussion in *Chang* pertained to California's borrowing statute.  The Illinois borrowing statute is similar, with two additional conditions:

> The Illinois "borrowing statute" is an exception to [the rule that limitations periods are governed, by Illinois law] but it has very limited application. The borrowing statute provides that "[w]hen a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." 735 ILCS 5/13–210. An additional judicially created condition narrows the borrowing statute even further: "[A]ll parties [must] be non-Illinois residents at the time the action accrued and until the limitations laws of the foreign state runs." *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 693 (1999). Thus, the Illinois courts have held that the borrowing statute applies only "where (1) the cause of action accrued in another jurisdiction; (2) the limitations period of that jurisdiction has expired; and (3) all parties were non-Illinois residents at the time the action accrued and remained so until the foreign limitations period expired." *Newell Co. v. Petersen*, 758 N.E.2d 903, 908 (Ill. App. Ct. 2001).

*Ennenga*, 677 F.3d at 774 n.3.  When it comes to the Illinois borrowing statute, a corporation is a resident only of its state of incorporation. *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 693 (Ill. App. Ct. 1999).  The defendants were at all relevant times residents of Delaware or Canada, and Czuba was a resident of New York. The Illinois borrowing statute applies to this case.  The court must apply the limitations period of either New York or Illinois, whichever is shorter.

The next issue is when Czuba's cause of action accrued.  Generally, "a cause of action 'accrues' when facts exist that authorize the bringing of a cause of action."  *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1028 (Ill. 2012).  Illinois courts have adopted the discovery rule: the limitation period begins to run when the plaintiff "knows or reasonably should know" both than an injury has occurred and that it was wrongfully caused; at that point the plaintiff must inquire further to determine whether an actionable wrong was committed. *Khan*, 978 N.E.2d at 1028-29. "The discovery rule can delay the commencement of the limitations period where an injury has already occurred but has not been discovered." *Khan*, 978 N.E.2d at 1035.  "When a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed. . . . [O]nce it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights."  *Nolan v. Johns-Manville Asbestos,* 421 N.E.2d 864, 868 (Ill. 1981).  The same is true in New York.  *See, e.g., Obispo v. 423 Madison Ave. L.L.C.*, 901 N.Y.S.2d. 908 (N.Y. Sup. 2009) (noting the discovery rule does not apply where plaintiff could have discovered his claim through reasonable diligence).

The parties dispute when Czuba's cause of action accrued.  Czuba admitted at his deposition that in 2002, he noticed the cracking on his shingles, and that he considered it to be a

problem that he should not forget about and walk away from.  The plaintiffs argue that the cause of action did not accrue until 2009 because up until that time Czuba only "noticed minimal problems" with the shingles. In 2009 when the condition of the roof was "serious enough to cause him concern," he contacted his insurance company.  Pl. Mem., d/e 188, p. 12.  The plaintiffs' argument does not mesh with Czuba's deposition testimony.  By his own admission, he was concerned enough to recognize that the cracking was a problem requiring his attention. At that point, he had an obligation to "inquire further to determine whether an actionable wrong was committed." *Khan*, 978 N.E.2d at 1028-29. The court finds that, except where noted otherwise, Czuba's claims accrued in 2002 when he first noticed the cracking.[1]

Czuba argues that the defendants are barred from asserting a statute of limitations defense due to the defendants' fraudulent concealment, citing *Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541 (Ill. App. Ct. 2004), and *Foster v. Plaut*, 625 N.E.2d 198 (Ill. App. Ct. 1993).  Under Illinois law, the defendants must have said or done something to lull the plaintiff into delaying the filing of Czuba's claim.  *Foster*, 625 N.E.2d at 203. The limitation period is not tolled if the plaintiff, exercising due diligence, could have discovered the cause of action in time to file his suit. *Foster*, 625 N.E.2d at 203; s*ee also Marasa v. Andrews*, 892 N.Y.S.2d 494, 495 (N.Y. App. 2010) (requiring plaintiff to use reasonable diligence to discover fraud). Czuba could have filed a timely lawsuit had he exercised ordinary diligence when he first noticed the cracking in 2002, (which worsened with each subsequent year). At that point, he had an obligation to inquire further.  He did not do so.[2]  Czuba may not avail himself of the fraudulent concealment defense to untimeliness.

Count I –  Breach of express warranty
Count IV – Breach of contract

---

[1] The defendants argue that Czuba's claim accrued in 2000 when he first experienced shingles breaking and blowing off his roof.  The court uses 2002, when Czuba noticed something that he considered to be a problem.  There is no difference in the outcome.

[2] Czuba argues that in 2002 he observed nothing more than what new shingles display in the first few years of their service life, and points to IKO's chart explaining the lifecycle of an asphalt shingle.  IKO explained that "asphalt shingles gradually change with the passage of time. Signs of this aging process may appear as early as the first couple of years, during what is called the **Curing Phase**.  At first you may notice small surface cracks or a few small blisters." Czuba noticed cracking after six years, and the cracking worsened over time instead of reaching the Stable Phase, when "signs of aging will slow down dramatically." Pl. Mem. p. 12.  What he observed is inconsistent with IKO's chart.  Moreover, the normal Curing Phase described by IKO would not have caused Czuba to believe that the situation should not be ignored.

Illinois' statute of limitation for breach of express warranty claims is four years.  *See* 810 ILCS 5/2-725(1).[3]  New York's statute is the same.  *See* N.Y.U.C.C. § 2-725.

> (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued.  By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

810 ILCS 5/2-725 (1)-(2); N.Y.U.C.C. §2-725(1)-(2).  Czuba purchased his house, and therefore his shingles, in 1996.  The express warranty, which extends to future performance, imposes a one-year limitation after the cause of action accrues.  Czuba should have discovered the cause of action no later than 2002.  He did not file his lawsuit until April 2009.  Under either the four-year or one-year period, his breach of express warranty claim is untimely.

Count IV of Czuba's complaint refers to the express warranty and other unidentified contracts and agreements for which the defendants received payment for the purchase price of the shingles.  The defendants move for summary judgment on Count IV, stating that the statute of limitations for breach of contract is six years.  *See Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 233 (N.D.N.Y. 2009) (relating to contract that governed dealings between shareholders). "A six-year statute generally governs breach-of-contract claims 'except as provided in . . . article 2 of the uniform commercial code.'" *Wuhu Import & Export Corp. v. Capstone Capital, L.L.C.*, 834 N.Y.S.2d 129, 130 (N.Y. App. 2007) (citing UCC 2-725).  The relevant limitation period is four years.  The cause accrues when tender of delivery is made.  *City of Cohoes v. Kestner Engineers P.C.*, 640 N.Y.S.2d 917, 920 (N.Y. App. 1996). Tender of delivery occurred in 1996.  Czuba's Count IV is untimely.

<u>Count II – Breach of implied warranty of merchantability and fitness for a particular purpose</u>

The statute of limitations for breach of an implied warranty is four years.  *Sille v. McCann Constr. Specialties Co.*, 638 N.E.2d 676, 681 (Ill. App. Ct. 1994); *Lindsay v. Toyota Motor Sales, U.S.A., Inc.*, 816 N.Y.S.2d 697 (N.Y. Sup. 2006). The cause of action accrues when

---

[3] The defendants argue that the limited warranty has lawfully reduced the limitation period to one year, in accordance with the last sentence in 810 ILCS 5/2-725(1).  Czuba argues that the one-year limitation period does not apply.  The court need not determine which argument has merit; his suit is untimely under the more generous four-year limitation period.

tender of delivery is made.  *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 75 (Ill. App. Ct. 2001); *Lindsay*, 816 N.Y.S.2d 697.  The delivery to Czuba took place in 1996.

Czuba does not provide any evidence or argument to refute the defendants' assertion of untimeliness on Count II.  Instead, he argues that the express limited warranty is unenforceable and does not bar an implied warranty claim, and the implied warranty applies regardless of privity.  The defendants argued only that Czuba's Count II was untimely.  Czuba has missed his "put up or shut up" moment.  Count II of Czuba's complaint is also time-barred.

<u>Count III – New York Consumer Protection Act</u>

In the fourth amended consolidated complaint [104], the named plaintiffs asserted their claims together in a single count.  Count III is labeled "Violation of Illinois Consumer Fraud and Deceptive Business Practices Act and Substantially Similar Laws of Certain Other States."  The Illinois statute applies only to consumer transactions that take place "primarily and substantially in Illinois."  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005).  Czuba's transaction did not take place "primarily and substantially in Illinois."  Therefore, New York's Consumer Protection from Deceptive Acts and Practices statute, New York General Business Law § 349, applies.

In *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474 (E.D.N.Y. 2011), the plaintiff purchased computers with allegedly faulty capacitors in 2003.  The plaintiff sued the manufacturer in 2010.  The court applied the three-year statute of limitations for Section 349 claims.  "Accrual occurs when plaintiff is injured by the deceptive act or practice that violated the statute."  *Statler*, 775 F. Supp. 2d at 484.  "[A]ccrual is not dependent upon discovery of either an injury or its specific cause."  *Statler*, 775 F. Supp. 2d at 484.

Czuba alleges that the defendants knew or should have known its shingles were defective, would fail prematurely. and were not as warranted.  His cause accrued in 1996; the limitation period was not extended until such time as he discovered the alleged defects.  He filed his lawsuit in 2009, which was ten years too late.  Count III of Czuba's complaint is also time-barred.

<u>Count V– Fraudulent concealment</u>[4]

Czuba asserts in Count V that the defendants intentionally concealed that the product was defective, would fail prematurely, and otherwise was not as warranted and represented by the defendants.  He argues that a reasonable person would have considered those facts relevant to the decision whether to purchase IKO shingles, negotiate additional warranty coverage or a lower price to reflect the risk, or simply avoid the risk by buying a competitor's shingles.  The

---

[4] Czuba raises fraudulent concealment as a defense to untimeliness and as a separate tort claim.  The former pertains to delayed filing of the lawsuit; the latter pertains to the shingles themselves.

defendants argue that New York's statute of limitation is six years from the date of purchase, or two years from the date of discovery, citing *Piedra v. Vanover*, 579 N.Y.S. 2d 675 (N.Y. App. 1992).   In Illinois, the statute of limitations for the tort of fraudulent concealment is five years. *Sabath v. Mansfield*, 377 N.E.2d 161, 168 (Ill. App. Ct. 1978) (citing former Ill. Rev. Stat. 1975, ch 83, par. 16; now 735 ILCS 5/13-205).  The shorter period is New York's two-year limitation beginning with the date of discovery.

When Czuba first noticed the cracking in 2002, he was concerned and knew he should not ignore it; yet, he did.  In 2002 (after only six years) the possibility that the shingles might not last for twenty-five years would reasonably have occurred to him.  The warranty was an important consideration to Czuba when he selected the shingles. He was on his roof every year from 2000 to 2008 and noticed the cracking become progressively worse.  He did not file his lawsuit until 2009.  At that point he was far outside the limitation period.   His claim is untimely.

Czuba does not set forth any argument that his claim is timely.  The defendants also argue that the claim fails as a matter of law, and Czuba limits his arguments to that issue.  A plaintiff may have a solid *prima facie* case, but if the claim is untimely, he is barred from proceeding further.

### Count VI – Negligence

Czuba alleges in Count VI that the defendants were negligent when they designed, manufactured, advertised, and sold a defective product, knowing the shingles would fail prematurely.  Illinois imposes a five-year limitation period on negligence claims.  *See* 735 ILCS 5/13-205; *E.J. Korvette v. Esko Roofing* Co., 350 N.E.2d 10, 11 (Ill. App. Ct. 1976).  New York imposes a three-year limitation period.  *Gianakakos v. Commodore Home Sys., Inc.*, 727 N.Y.S.2d 806, 808 (N.Y. App. 2001). In *Gianakakos*, a plaintiff sued the builder of his manufactured home, asserting negligence and products liability claims arising from a furnace explosion and inadequate insulation.  *Gianakakos*, 727 N.Y.S.2d at 808.  The court noted that the claim relating to inadequate insulation accrued on the date of delivery.  *Gianakakos*, 727 N.Y.S.2d at 808.  In Czuba's case, he took delivery of his modular home in 1996. He did not file his lawsuit until 2009.  It is clearly untimely.  Again, Czuba has not offered any argument to show that Count VI was timely.

The court agrees that the defendants are entitled to summary judgment on Count VI.

### Count VII – Unjust enrichment

The defendants argue that a six-year limitation period applies to Czuba's unjust enrichment claim under New York law. *Indovino v. Tassinari*, 2006 WL 2505232, at *4 (E.D.N.Y. Aug. 28, 2006). The statute of limitations in Illinois is five years. *Zic v. Italian Gov't Travel Office*, 149 F. Supp. 2d 473, 475-76 (N.D. Ill. 2001) (citing 735 ILCS 5/13-205).  The cause of action accrues when services are rendered.  *Zic*, 149 F. Supp. 2d at 476; *Indovino*, 2006 WL 2505232, at *4 (noting that the cause accrues when payment is made).  Czuba's cause accrued in 1996.  His complaint was filed thirteen years later.  It is clearly untimely.

Czuba does not set forth any argument that his claim is timely but instead argues against the defendants' alternate assertion that the claim fails as a matter of law; Czuba limits his

arguments to that issue.  The court need not determine whether Czuba has a solid *prima facie* case; if it is not timely Czuba cannot proceed further.

The court agrees that the defendants are entitled to summary judgment on Count VII.

<u>CONCLUSION</u>

For the foregoing reasons, the defendants' motion for summary judgment as to plaintiff Czuba [170] is granted in its entirety.   He is terminated as a plaintiff in the consolidated action. His individual case, 09-2295, is terminated.

Entered this 12th day of April, 2013.

**/s/Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE